IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSIE J. PAYNE, JR. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 09-0568 |
| TRANS UNION, LLC, ET AL. : | |

SURRICK, J.                                                                                                     MARCH 31, 2010

**MEMORANDUM**

Presently before the Court is the Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) of Defendants LexisNexis Risk & Information Analytics Group Inc. and Reed Elsevier Inc. (Doc. No. 32.) For the following reasons, Defendants' Motion will be denied.

**I.    BACKGROUND**

On February 9, 2009, Plaintiff Jessie Payne, Jr., filed this lawsuit against Defendants Trans Union, LLC, LexisNexis Risk & Information Analytics Group, Inc., and Reed Elsevier, Inc. ("Defendants"), alleging that Defendants disseminated inaccurate information regarding his credit history.[1] (Doc. No. 1.) The Amended Complaint filed on April 30, 2009, alleges claims for violations of the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq., as amended* ("FCRA"); defamation; negligence; and invasion of privacy/false light. (Doc. No. 24 ¶¶ 35-72.) The Amended Complaint alleges that Defendants reported inaccurate information to third parties regarding Plaintiff's credit history. (*Id.* ¶ 12.) The inaccurate information included, but was not limited to, a bankruptcy, multiple tax liens, and a mortgage account. (*Id.* ¶ 13.) Plaintiff has repeatedly disputed the accuracy of the information with Defendants, to no avail. (*Id.* ¶¶ 21-27.)

---

[1] Defendant Trans Union LLC has reached a settlement with Plaintiff. (Doc. No. 43.)

Plaintiff seeks damages, an injunction, and attorney's fees. (*Id.* at 13-14.)

This lawsuit is one of several nearly identical lawsuits filed by the same law firm against a group of defendants that includes the Defendants in this action. *See, e.g., Knechtel v. Choicepoint, Inc.*, No. 08-5018 (D.N.J.); *Hamilton v. Choicepoint, Inc.*, No. 08-5019 (D.N.J.); *Carlton v. Choicepoint, Inc.*, No. 08-5779 (D.N.J.); *Iler v. Equifax Info. Servs., LLC*, No. 08-1862 (D.N.J.); *Bonebrake v. Experian Info. Solutions, Inc.*, No. 08-1976 (E.D. Pa.); *Breslin v. Trans Union, LLC*, No. 08-2236 (E.D. Pa.); *Thomas v. LexisNexis Risk & Analytic Group, Inc.*, No. 08-4862 (E.D. Pa.); *Marricone v. Experian Info. Solutions, Inc.*, No. 09-1123 (E.D. Pa.).

On April 13, 2009, Defendants filed a motion to dismiss the Amended Complaint. (Doc. No. 32.) In their motion, Defendants argue that they are not a "consumer reporting agency" ("CRA") to which the FCRA would apply. (Doc. No. 32 at 13.) They also argue that Plaintiff has failed to state a claim for defamation and invasion of privacy/false light. (*Id.* at 1.) After filing their briefs, Plaintiff and Defendants submitted the recent cases of *Marricone*, *Breslin*, *Carlton*, and *Knechtel* for our consideration. In these cases district courts had ruled on motions to dismiss from the same or similarly situated defendants raising the same or very similar issues. In *Marricone*, the court denied the defendants' motion as to the FCRA claims and granted the defendants' motion to dismiss as to Plaintiff's invasion of privacy/false light claims. *Marricone v. Experian Info. Solutions, Inc.*, No. 09-1123, 2009 WL 3245417 (E.D. Pa. Oct. 9, 2009). In *Breslin*, the court followed *Marricone* and granted the defendants' motion to dismiss as to the invasion of privacy/false light claim while denying it as to the FCRA claims. *Breslin v. Trans Union, LLC*, No. 08-2236 (E.D. Pa. Oct. 21, 2009) (order granting in part and denying in part defendants' motion to dismiss). The court in *Carlton* and *Knechtel* went in the other direction,

dismissing the FCRA claims without prejudice, concluding that the plaintiffs had not properly alleged that the defendants were CRAs under the FCRA. *Carlton v. Choicepoint, Inc.*, No. 08-5779, 2009 WL 4127546, at *4 (D.N.J. Nov. 23, 2009); *Knechtel v. Choicepoint, Inc.*, No. 08-5018, 2009 WL 4123275, at *4 (D.N.J. Nov. 23, 2009). The court denied the defendants' motions to dismiss as to the other counts. *Carlton*, 2009 WL 4127546, at *7; *Knechtel*, 2009 WL 4123275, at *8.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Iqbal*, the Supreme Court set forth a two-part analysis that district courts must conduct when reviewing a complaint challenged under Rule 12(b)(6). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (describing *Iqbal*'s two-step inquiry). The district court must first separate "the factual and legal elements of a claim," accepting all of the complaint's well-pleaded facts as true but rejecting legal conclusions. *Id.* at 210 (citing *Iqbal*, 129 S. Ct. at 1949); *see also Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."). Under this analysis, well-pleaded factual allegations are to be given a presumption of veracity. *Iqbal*, 129 S. Ct. at 1950. The district court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S.

3

Ct. at 1950). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *Id.* By contrast, a complaint that demonstrates entitlement to relief through well-pleaded facts will survive a motion to dismiss. *See id.* Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

## III. DISCUSSION

After reviewing the parties' submissions, the case law, and the recent opinions in *Marricone*, *Breslin*, *Knechtel*, and *Carlton*, we conclude that Defendants' Motion to Dismiss must be denied.

### A. FCRA Claims

Count Two of the Amended Complaint seeks relief from Defendants for violations of 15 U.S.C. §§ 1681i, 1681e(b), 1681s-2(b), 1681c, and 1681g. (Doc. No. 24 ¶¶ 45(a)-(d)); *compare with Knechtel*, 2009 WL 4123275, at *2 (plaintiff alleging violations of the same sections of the FCRA). Defendants argue that Plaintiff has not sufficiently pled that any Defendant is a CRA, which is a threshold requirement for Plaintiff's claims under §§ 1681i, 1681e(b), 1681c, and 1681g. (Doc. No. 32 at 13-14.) Plaintiff counters that the Amended Complaint sufficiently alleges that Defendants are CRAs under the FCRA. (Doc. No. 35-2 at 13-16.)

The FCRA defines a CRA as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of

4

furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Similarly, the FCRA defines a "consumer report" as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

*Id.* § 1681a(d)(1). Thus, for an entity to be a CRA, (1) it must act in exchange for compensation; (2) it must regularly assemble or evaluate information on consumers; (3) its purpose in evaluating this information must be to furnish consumer reports; and (4) it must utilize interstate commerce in the preparation or furnishing of the consumer report. *Knechtel*, 2009 WL 4123275, at *3 (citing *Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1056 (S.D. Ohio 2002)).

Defendants argue that (1) Plaintiff has not adequately alleged that Defendants assemble and evaluate information *on consumers*, and that (2) Plaintiff has not adequately alleged that Defendants disseminated a "consumer report." (Doc. No. 32 at 15-18.)

Courts have found that the term "assemble or evaluate" "implies a function which involves more than receipt and retransmission of information identifying a particular debt." *Knechtel*, 2009 WL 4123275, at *3 (surveying cases and quoting *D'Angelo v. Wilmington Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981)) (internal quotation marks omitted). Merely

5

sending or conveying documents regarding consumer debts to CRAs does not constitute "assembling or evaluating" consumer credit information under the FCRA. *Ori v. Fifth Third Bank*, 603 F. Supp. 2d 1171, 1175 (E.D. Wis. 2009) (citing *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994)).

In *Marricone*, Judge Brody of this Court rejected arguments identical to those offered by Defendants here. *See Marricone*, 2009 WL 3245417, at *1. Judge Brody concluded that

> [t]he definition of a consumer reporting agency in 15 U.S.C. § 1681a(f) is fairly broad, and the language of the statute as well as relevant case law demonstrate that whether an entity is acting as a consumer reporting agency in a particular situation is a fact-specific inquiry. While credit bureaus such as Equifax may be the paradigmatic CRAs, the term can extend beyond such entities. *See, e.g., Williams v. LexisNexis Risk Mgmt. Inc.*, 2007 U.S. Dist. LEXIS 62193, *4 (E.D. Va. 2007); *Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1061 (S.D. Ohio 2002). Thus factual discovery will help determine whether Defendants acted as CRAs in this case. Absent binding case law holding that Lexis and Reed are not CRAs as a matter of law, Plaintiff's allegations that Defendants operated as CRAs survives a 12(b)(6) motion to dismiss.

*Id.* Judge Brody denied the motion to dismiss the FCRA claims without prejudice to Defendants to reassert their arguments after the facts had been fleshed out in discovery. In *Breslin*, Judge McLaughlin of this Court in deciding an identical motion to dismiss agreed with Judge Brody, concluding that her resolution was "thorough and well reasoned." *See Breslin*, No. 08-2236 (E.D. Pa. Oct. 21, 2009).

We agree with the approach taken by Judge Brody and Judge McLaughlin. The determination of whether Defendants are CRAs is a fact-specific inquiry. Discovery will be of assistance in reaching the ultimate determination. Moreover, Plaintiff's Amended Complaint alleges that LexisNexis is a division of Reed Elsevier; that Lexis and Reed work in concert with each other with respect to public records communications; that Lexis provides background

6

screening services and decisions-making intelligence; that Lexis and Reed acquired ChoicePoint Services, Inc., a public records business; that ChoicePoint has been found to be a CRA under the FCRA; that Lexis and Reed have assumed the role of communicating and publishing select records information including information about bankruptcies, judgments, and tax liens as successors to ChoicePoint's public records business; and that Lexis and Reed operate a consumer reporting agency. (Doc. No. 24 ¶¶ 6-11, 16-18.) These allegations are sufficient to permit a reasonable inference that in exchange for compensation Defendants assembled and evaluated information on consumers bearing on their creditworthiness for third parties and that they used facilities of interstate commerce to furnish their reports. These allegations are sufficient to permit further discovery on the issue.

### B. Supplemental State Law Claims

The parties have not fully briefed the issue of which state's law applies to Plaintiff's supplemental state-law claims. In a footnote Defendant indicates that Mississippi law applies because Plaintiff is a resident of Mississippi, and the state of a plaintiff's domicile is typically the state with the greater interest in a defamation case. (Doc. No. 32 at 19 n.8 (citing *Fitzpatrick v. Milky Way Prods.*, 537 F. Supp. 165, 171 & n.16 (E.D. Pa. 1982).) Plaintiff does not take issue with Defendants' position. Based upon this apparent agreement, we will assume for purposes of this Motion that Mississippi law applies to Plaintiff's state-law defamation and invasion of privacy claims. *See 777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 105 F. Supp. 2d 56, 61 n.2 (E.D.N.Y. 2000) (assuming for purposes of motion to dismiss that New York law applied).

#### 1. Defamation

To establish a claim for defamation under Mississippi law, a plaintiff must prove: (1) a

7

false and defamatory statement concerning plaintiff; (2) the unprivileged publication to a third party; (3) fault amounting at least to negligence on part of publisher; (4) and either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002) (citing *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998)). Defendants argue that the Amended Complaint fails to allege sufficient facts to state a claim for relief. (Doc. No. 32 at 19-21.) Plaintiff responds that there are sufficient facts pled to withstand the Motion. We agree with Plaintiff.

Disregarding allegations that are merely legal conclusions, Plaintiff has alleged the following well-pleaded facts: (1) Defendants have reported derogatory and inaccurate statements regarding a bankruptcy, multiple tax liens, and a mortgage account (Doc. No. 24 ¶¶ 12-13, 20); (2) the allegedly inaccurate and derogatory statements were reported to third parties (*id.* ¶¶ 12, 15, 17-20); (3) Plaintiff disputed the inaccurate information through the national CRAs, which gave notice of the dispute to Defendants (*id.* ¶¶ 21-27); and (4) Plaintiff has suffered damage as a result of Defendants' actions. (*Id.* ¶¶ 28-32.) These allegations, taken as true, establish a plausible claim for defamation under Mississippi law. Defendants' Motion to Dismiss will therefore be denied as to Count Four of the Amended Complaint.

2. *Invasion of Privacy/False Light*

Under Mississippi law, the tort of invasion of privacy is comprised of four distinct subtorts: (1) the intentional intrusion upon the solitude or seclusion of another; (2) the appropriation of another's identity for an unpermitted use; (3) the public disclosure of private facts; and (4) holding another to the public eye in a false light. *Plaxico v. Michael*, 735 So. 2d 1036, 1039 (Miss. 1999) (citing *Candebat v. Flanagan*, 487 So. 2d 207, 209 (Miss. 1986)); *see also*

8

Restatement (Second) of Torts § 652A. Plaintiff alleges only that Defendants held him to the public eye in a false light. (Doc. No. 24 ¶¶ 69-72.)

To establish a claim for false light in Mississippi, a plaintiff must show that (1) the false light in which he was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Cook v. Mardi Gras Casino Corp.*, 697 So. 2d 378, 382 (Miss. 1997) (citing *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77, 79 (Miss. 1986)).

The Amended Complaint states a plausible claim for false light. Plaintiff has alleged that Defendants reported to third parties that Plaintiff had declared bankruptcy and was subject to multiple tax liens, and that this information reflected negatively on Plaintiff. (Doc. No. 24 ¶¶ 12-14, 20.) Moreover, Plaintiff has alleged that he repeatedly complained about the inaccurate information to Defendants, and that Defendants took no action to address his complaints. (*Id.* ¶¶ 21-27.) These allegations establish a plausible claim for false light under Mississippi law.

Defendants argue that Plaintiff has failed to state a claim for false light because the inaccurate information that Defendants disseminated about Plaintiff is not private. Defendants argue that this information "is of *public* record readily accessible by the general public." (Doc. No. 32 at 21.) We have found no authority, and Defendants have provided none, that under Mississippi law information used to portray a party in a false light must be private.[2]

---

[2] We note that the court in *Marricone* applied Pennsylvania law and dismissed the plaintiff's false light claim because the plaintiff had not alleged that the facts used to portray him in a false light were private facts. 2009 WL 3245417, at *2. The court determined that the elements of a false light claim under Pennsylvania law are "publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern

9

Defendants also argue that Plaintiff has failed to allege that the inaccurate information was sufficiently publicized to state a claim for false light. (Doc. No. 32 at 21-22.) The Amended Complaint alleges that the inaccurate information was transmitted to "potential credit grantors and creditors as well as family, friends, and the general public." This is sufficient. Count Six of the Amended Complaint therefore survives the Motion to Dismiss.

C.  **Injunctive Relief**

In his prayer for relief, Plaintiff seeks an injunction directing Defendants to cease further reporting of inaccurate information about Plaintiff and to send updated credit reports to entities that have requested Plaintiff's credit report in the last three years. (Doc. No. 24 at 13-14.) Defendants argue that seeking injunctive relief for the state-law claims is an end-run around the FCRA, which does not permit injunctive relief in private litigation.

The courts in *Marricone* and *Knechtel* concluded that this issue was not ripe for disposition. The *Knechtel* court noted that whether the FCRA precludes Plaintiff from seeking injunctive relief under state law raised issues that had not been briefed by the parties. *Knechtel*, 2009 WL 4123275, at *7. The same situation exists here. The parties have not adequately briefed whether state law claims that permit injunctive relief are preempted by the FCRA. Under the circumstances we will not address this issue. Defendants' Motion to Dismiss Plaintiff's request for injunctive relief is therefore denied without prejudice to Defendants' right to raise the issue at a later date.

---

to the public." *Id.* at *2 (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997)) (internal quotation marks omitted).

10

## IV. CONCLUSION

For these reasons, the Defendants' Motion to Dismiss will be denied.

An appropriate Order follows.

BY THE COURT:

R. Barclay Surrick, Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSIE J. PAYNE, JR.

v.

TRANS UNION, LLC, ET AL.

CIVIL ACTION

NO. 09-0568

## ORDER

AND NOW, this 31st day of March, 2010, upon consideration of the Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) of Defendants LexisNexis Risk & Information Analytics Group Inc. and Reed Elsevier Inc. (Doc. No. 32), it is ORDERED that Defendants' Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

R. Barclay Surrick, J.